1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7                FOR THE DISTRICT OF ARIZONA

8

9    Marcos Antonio Lomeli,                 )    No. CV-08-00955-PHX-PGR (MHB)
                                            )
10              Petitioner,                 )    **REPORT AND RECOMMENDATION**
                                            )
11   vs.                                    )
                                            )
12   Michael B. Mukasey, et al.,            )
                                            )
13              Respondents.                )
                                            )
14
     TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:
15
            On May 27, 2008, Petitioner Marcos Lomeli filed a Petition for Writ of Habeas
16
     Corpus pursuant to 28 U.S.C. § 2241, contending that his mandatory detention in
17
     immigration custody pending removal is unconstitutional (Doc. #1).  On August 14, 2008,
18
     Respondents were served with the Petition, and on August 22, 2008, Respondents entered
19
     a Notice of Appearance. (Docs. ##10, 13.) On August 30, 2008, Respondents filed a Motion
20
     to Hold Proceedings in Abeyance Pending Extrajudicial Resolution Efforts, based upon two
21
     recent Ninth Circuit opinions holding that Petitioner "may seek a bond redetermination
22
     hearing before an immigration judge." (Doc. #14.) On September 3, 2008, the Court entered
23
     an Order to Show Cause, directing Respondents to file a Response showing good cause why
24
     Petitioner's Petition should not be granted, given Respondents' stated position on Petitioner's
25
     right to a bond hearing before an immigration judge.  (Doc. #17.)
26
            On September 10, 2008, Respondents filed their Response, arguing therein that the
27
     Petition should be denied, as Petitioner was afforded a bond hearing on September 15, 2008,
28

1  before an immigration judge, and although bail was denied, Petitioner does not have recourse

2  before this Court to challenge that bail determination. (Doc. #18.) Petitioner filed a Traverse

3  on October 2, 2008, alleging that his detention remains unlawful on numerous grounds, that

4  his bond hearing was constitutionally inadequate, and that he should not be required to

5  exhaust administrative remedies before seeking judicial review of the bond determination.

6  (Doc. #21.)  Respondents sought leave to file a Reply, given the newly raised issues in

7  Petitioner's Traverse, which was granted by this Court. (Doc. #24.) Respondents filed their

8  Reply on October 21, 2008. (Doc. #26.)

9  **BACKGROUND**

10  The Immigration and Naturalization Service ("INS")[1] considers Petitioner to be a

11  native and citizen of Mexico. (Doc. #18, Exh. A.)  In 1998, Petitioner was convicted of two

12  counts of Lewd Acts with a Child under the age of 14 a felony, in violation of California

13  Penal Code section 288(A). (Doc. #18, Exh. B.)  He was sentenced to ten years in prison for

14  these offenses.  (Id.)  On November 11, 2006, Petitioner was served with an INS Notice to

15  Appear for removal proceedings, based upon his status as an alien not admitted or paroled

16  into the United States, and his aforementioned felony convictions.  (Doc. #18, Exh. C.).

17  During the removal proceedings, on December 9, 2006, Petitioner filed a Motion For

18  Cancellation of Removal and For Res Judicata and Termination of Proceedings, based upon

19  a claim of American citizenship. (Doc. #18, Exh. D.)  On March 9, 2007, the Immigration

20  Judge ("IJ") sustained the INS allegations that Petitioner is a native and citizen of Mexico,

21  and did not sustain the allegations that Petitioner was not admitted or paroled into the United

22  States.   (Doc. #18, Exh. E.)   Subsequently, on March 21, 2007, ICE filed Superseding

23  Additional Charges of Removability, alleging Petitioner's admission into the United States

24  "on an unknown date and at an unknown time on an unknown status," and that Petitioner

25  does not possess a valid permit or visa to remain in the United States. (Doc. #18, Exh. F.)

26

27

28  [1]Now the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE").

1   On May 3, 2007, an IJ denied Petitioner's application for deferral of removal under Article

2   II of the Convention Against Torture and ordered Petitioner removed to Mexico.  (Doc. #18,

3   Exh. G.)

4          Petitioner appealed the Order of Removal on May ll, 2007, to the Board of

5   Immigration Appeals ("BIA"), specifically appealing the denial of relief from removal under

6   the Convention Against Torture based upon his status as a homosexual and fear of reprisal

7   in Mexico.  (Doc. #18, Exh. H.)  The BIA dismissed the appeal, upholding the IJ's decision

8   that  Petitioner had failed to satisfy his burden of establishing his eligibility for deferral of

9   removal under the Convention Against Torture.  (Doc. #18, Exh. I.)  On August 17, 2007,

10  Petitioner filed a Petition for Review with the Ninth Circuit Court of Appeals.  (Doc. #18,

11  Exh. J.)  On February 15, 2008, the Ninth Circuit granted Petitioner's Motion to Stay

12  Removal. (Id., at 3.)  Mediation was ordered on September 9, 2008. (Id., at 4.)  Petitioner's

13  initiated stay of removal prevents ICE from effectuating his removal to Mexico.  If the stay

14  were lifted, ICE would then be able to consummate its efforts to remove Petitioner.  (Doc.

15  #18, Exh. K.)

16         Petitioner filed his Petition for Writ of Habeas Corpus on May 27, 2008, challenging

17  his prolonged detention, since November 9, 2006, on statutory and constitutional grounds.

18  (Doc. #1, at 1-2.)  In his Petition, he raised three "distinct challenges" to his detention:

19      1) His removal is not reasonably foreseeable, and therefore he should be released
    pursuant to Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006).
20
        2) His removal proceeding is not expeditious, and he therefore should be afforded an
21  individualized bond hearing.

22      3) His continued detention violates the Due Process Clause due to the length of
    detention and the lack of being afforded a bond hearing.
23  (Doc. #1, at 8-9.)

24         While his Petition was pending, and before the deadline for Respondents to file an

25  Answer, the Ninth Circuit decided two cases bearing on the issues raised by Petitioner:

26  Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008), and Casas-Castrillon v. Dept. of

27  Homeland Security, 535 F.3d 942 (9th Cir. 2008).  The government then notified Petitioner

28  of these decisions, indicating that he could request a bond hearing before an IJ.  (Doc. #14.)

1   On September 15, 2008, Petitioner received a bond hearing before an IJ, wherein the IJ heard

2   evidence and ultimately denied bond upon finding Petitioner a danger to the Community.

3   (Doc. #18, Exh. N.)

4        Since Petitioner has received a bond redetermination, Claim 2 and part of Claim 3 of

5   his Petition are now moot.  Claim 1 and the remaining issue of Claim 3 relate to the length

6   of Petitioner's detention and the foreseeability of his removal.  In Petitioner's Traverse, filed

7   in response to Respondents' Response to Order to Show Cause, he raises the following new

8   claim, that his bond hearing was constitutionally inadequate, for the following reasons:

9        1) The bond proceeding was not recorded.

10        2) The IJ failed to advise him of his right to an attorney.

11        3) The IJ improperly placed the burden on Petitioner to prove that he is not a flight

12   risk or danger to the community.

13        4) The IJ allowed hearsay, uncorroborated testimony to be introduced as evidence.

14        5) The IJ disregarded Petitioner's evidence of good moral conduct.

15   (Doc. #21.)

16        Respondents argue that Petitioner's continued detention comports with due process

17   as he is "capable of being removed once his stay of removal is lifted," and that Petitioner's

18   bond hearing was constitutionally adequate, and that in any event, Petitioner must exhaust

19   administrative avenues prior to seeking judicial review.  (Doc. #26, at 2.)

20                                         **LAWFULNESS OF DETENTION**

21   **A.   Petitioner's Continued Detention.**

22        In his Petition, Petitioner cites <u>Nadarajah v. Gonzales</u>, 443 F.3d 1069 (9th Cir. 2006)

23   for the proposition that his detention is unlawful because it has exceeded the presumptively

24   reasonable period of six months.  (Doc. #1, at 9.)  Petitioner has been in INS custody now

25   for almost two years.  The IJ's Order of Removal has been stayed, pursuant to Petitioner's

26   request, by the Ninth Circuit Court of Appeals.  In a recent Ninth Circuit decision, the court

27   held, in facts almost identical to the facts of Petitioner's case, that 8 U.S.C. §1226(a)

28   authorized the continued detention of Prieto-Romero, a Mexican citizen seeking review of

1   his removal order. <u>Prieto-Romero</u>, 534 F.3d at 1063-64. The court refused to read <u>Nadarajah</u>

2   to hold that an alien's removal is not "reasonably foreseeable" simply because the exact date

3   his detention will conclude is uncertain. <u>Id.</u>, at 1064. Rather, the court found that Prieto-

4   Romero's removal had been delayed by his decision to seek judicial review, and that review

5   has a final termination point, and that Prieto-Romero's detention therefore was not indefinite.

6   <u>Id.</u>

7        The court further rejected Prieto-Romero's contention that his detention was in

8   violation of the constitutional concerns expressed in <u>Zadvydas v. Davis</u>, 533 U.S. 6787

9   (2001). In <u>Zadvydas</u>, the issue before the U.S. Supreme Court was whether or not aliens who

10  had received a final order of removal could continue to be indefinitely detained under

11  §1231(a)(6). <u>Id.</u> While Prieto-Romero, like Petitioner, was being detained under §1226(a),

12  and not §1231(a)(6), the Ninth Circuit held that detention under either may not be indefinite.[2]

13  <u>Prieto-Romero</u>, 534 F.3d at 1062-63.   Nevertheless, the court held that Prieto-Romero's

14  continued detention was authorized:

15       Although his removal has certainly been delayed by his pursuit of judicial
         review of his administratively final removal order, he is not stuck in a
16       "removable-but-unremovable limbo," as the petitioners in *Zadyvdas* were.
         Here there is no evidence that Prieto-Romero is unremovable because the
17       destination country will not accept him or his removal is barred by our own
         laws.  To the contrary, the government introduced evidence showing that
18       repatriations to Prieto-Romero's country of origin, Mexico, are routine and the
         government stands ready to remove Prieto-Romero as soon as judicial review
19       is complete.
    <u>Id.</u>, at 1063 (internal citations omitted).
20
         The court distinguished <u>Zadyvdas</u> further by noting that the removal of the aliens in
21
    that case was not reasonably foreseeable because no country would accept them. <u>Id.</u>, at
22
    1063-64. The court further placed the onus on the alien to demonstrate that he was
23
    unremovable in order for his detention to be considered indefinite. <u>Id.</u>; <u>Diouf v. Mukasey</u>, ---
24

25

26       [2]Petitioner argues that he should be considered detained pursuant to the mandatory
27  provisions of 8 U.S.C. §1226(c). Petitioner's detention falls under 1226(a) given his pending
    Petition for Review in the Ninth Circuit and stay of removal. <u>Casas-Castrillon</u>, 535 F.3d 942;
28  <u>Prieto-Romero</u>, 534 F.3d 1053.

1  F.3d ----, 2008 WL 4253851, *8 (9th Cir. Sept. 18, 2008) (stating: "[i]n Prieto-Romero, the

2  Ninth Circuit construed this [Zadvydas] language to require the alien to show that he would

3  be unremovable even after the government defeated his petition for review"). Petitioner has

4  not demonstrated that he is unremovable. In fact, ICE removes on average, 154,000 Mexican

5  citizens or nationals each year. (Doc. #18, Exh. K.) In the event the Ninth Circuit dismisses

6  his Petition for Review, then ICE will complete its efforts to remove Petitioner to Mexico.

7  (Id.) Petitioner's continued detention is authorized.

8  **B.     Petitioner's Bond Hearing.**

9          Respondents contend that this Court should not consider Petitioner's claimed defects

10  in his bond proceedings, because "[a]ny review of the bond decision should first be

11  conducted by the BIA, which Petitioner recognized when he reserved appeal to the BIA of

12  his bond decision," and that "Petitioner should be required to exhaust his administrative

13  remedies before seeking review from this Court." (Doc. #26, at 4.) Decisions of IJ s may

14  be appealed to the BIA. 8 C.F.R. §1003.38. On September 22, 2008, Petitioner filed his

15  Notice of Appeal to the BIA, raising the identical bond hearing issues as he raises here.

16  (Doc. #21, Exh. Z.) That appeal has not yet been decided. "[A]s a prudential matter, ...

17  habeas petitioners [must] exhaust available judicial and administrative remedies before

18  seeking relief under 2241." Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001),

19  abrogated on other grounds, Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006); Arango

20  Marquez v. I.N.S., 346 F.3d 892, 897 (9th Cir. 2003)("we require, as a prudential matter, that

21  habeas petitioners exhaust available judicial and administrative remedies before seeking

22  relief under 2241"); Paga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)(finding that even

23  when not mandated, exhaustion "may be judicially imposed as a matter of precedence").

24          Petitioner claims that he should be excused from the exhaustion requirement, as his

25  bond hearing was constitutionally inadequate, and that this Court should "excuse exhaustion

26  because the BIA has no jurisdiction to adjudicate constitutional issues," and because he "has

27  established an overriding interest that warrants disregarding exhaustion." (Doc. #21, at 7,

28  11.) He cites Bagues-Valles v. INS, 779 F.2d 483 (9th Cir. 1985), and Garcia-Ramirez v.

1  Gonzales, 423 F.3d 935 (9ᵗʰ Cir. 2005) in support of his position.    The holding of Bagues

2  was called into doubt in Liu v. Waters, 55 F.3d 421 (9ᵗʰ Cir. 1995).  Citing Bagues, the court

3  in Liu noted that "in accepting for review some other so-called due process claims in

4  immigration cases we have also broadly stated that we did so because the BIA lacks

5  jurisdiction to adjudicate constitutional questions. . . . A narrower and more accurate

6  statement would be that the BIA lacks jurisdiction to decide questions of constitutionality of

7  governing statutes or regulations."  55 F.3d at 425 (citations omitted).  Also the court noted

8  that "[i]t is equally clear that the BIA does have authority to reopen cases to fix

9  administratively correctable procedural errors, even when these errors are failures to follow

10  due process."  Id., at 426.  The court concluded as follows:

11  > On the one hand, we will not hear claims that have not been presented to the
   > BIA simply because they have been labeled constitutional questions; on the
12  > other, we will not require a petitioner to engage in the futile exercise of making
   > a motion to reopen when the BIA lacks the jurisdiction to entertain the claim.

13  Id.

14  In Garcia-Ramirez, the court held that the alien was excused from the exhaustion

15  requirement because her claim involved the retroactivity of legislation, and that

16  "[r]etroactivity challenges to immigration laws implicate legitimate due process

17  considerations that need not be exhausted in administrative proceedings because the BIA

18  cannot give relief on such claims."  Garcia, 423 F.3d at 938.

19  Petitioner couches his claims regarding the bond hearing as constitutional error.  This

20  label does not transform otherwise non-constitutional errors into constitutional ones.  See

21  Torres-Aguilar v. I.N.S., 246 F.3d 1267, 1271 (9ᵗʰ Cir. 2001)("Petitioner may not create the

22  jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion

23  argument in constitutional garb.").  Petitioner claims that his hearing was constitutionally

24  defective for the following reasons: (1) The bond proceeding was not recorded; (2) The IJ

25  failed to advise him of his right to an attorney; (3) The IJ improperly placed the burden on

26  Petitioner to prove that he is not a flight risk or danger to the community; (4) The IJ allowed

27  hearsay, uncorroborated testimony to be introduced as evidence; and (5) The IJ disregarded

28  Petitioner's evidence of good moral conduct.

1    1.      <u>Failing to Record Bond Proceeding</u>.

2        Petitioner has not demonstrated that there is a constitutional requirement that bond

3 proceedings be recorded.  In fact, bond hearings are not generally recorded. (Doc. #26, Exh.

4 1, at 126, 127.)  Petitioner was given a summary notice of the decision of the IJ, and will

5 receive the IJ's "written decision based on notes from the hearing" on appeal.  (Doc. #26,

6 Exh. 2; Exh. 1, at 127.)  Thus, Petitioner's "lack of record" claim should be administratively

7 exhausted so that the BIA can review the claim based upon the IJ's written decision.

8    2.      <u>Failure to Apprise of Right to Counsel</u>.

9        Petitioner does not allege that the immigration court did not comply with the Due

10 Process requirement that an alien be apprised of his right to counsel not at government

11 expense.  This right is codified in 18 U.S.C. §1362, which provides the right to counsel, at

12 no government expense, during removal and appeal proceedings.  Furthermore, there must

13 be a knowing and voluntary waiver of this right before an alien can appear *pro se*.  <u>Baltazar-</u>

14 <u>Alcazar v. I.N.S.</u>, 386 F.3d 940, 945 (9th Cir. 2004).  Petitioner does not allege that he was

15 not advised of his right to counsel in the removal proceedings.  He alleges that he was not

16 "reapprised" during the bond hearing.  There is no requirement that the court reappraise an

17 alien of this right before a bond hearing.  Petitioner also claims that counsel should have been

18 appointed to represent him if he could not afford to hire an attorney.  This claim is without

19 merit.  <u>See</u> <u>id.</u> at 945; 8 U.S.C. §1362.

20 / / /

21 / / /

22 / / /

23 / / /

24

25    3.      <u>Improper Shifting of the Burden of Proof, Introduction of Hearsay, and Failure to</u>
<u>Consider Evidence of Good Moral Conduct</u>.

26

27        Petitioner challenges the   IJ's decision to consider certain evidence, and not to

28 consider other evidence.  These discretionary decisions by the IJ do not rise to the level of

1   constitutional magnitude and Petitioner should exhaust these issues administratively. <u>See</u>

2   <u>Prieto-Romero</u>, 534 F.3d at 1067.  Petitioner is correct that the burden of establishing that

3   Petitioner should not be entitled to bond is on the government.  <u>Casas-Castrillon</u>, 535 F.3d

4   at 951 (citing <u>Tijani v. Willis</u>, 430 F.3d 1241, 1242 (9ᵗʰ Cir. 2005)).  Even if the IJ improperly

5   shifted the burden, Petitioner must still demonstrate prejudice.  <u>Prieto-Romero</u>, 534 F.3d at

6   1066.  At his bond hearing, counsel for ICE submitted conviction documents "corroborating

7   Mr. Lomeli's 1998 conviction for Lewd and Lascivious Acts with a Minor Under 14," for

8   which he received a 10-year prison sentence, and noted that the victims in that case were

9   Petitioner's eight and fourteen-year old nieces. (Doc. #26, Exh. 5, ¶¶ 5, 6.)  Counsel also

10  noted Petitioner's additional criminal history:

11          [A]n October 11, 1986 conviction for Possession of a Controlled Substance,
        a February 24, 1987 conviction for Disorderly Conduct and Under the
12      Influence of a Controlled Substance, a March 28, 1989 conviction for Under
        the Influence of a Controlled Substance, and a September 14, 1989 conviction
13      for Under the Influence of a Controlled Substance.
    (<u>Id.</u>)
14
        The IJ found that Petitioner "continues to be a danger to the community based on the
15
    severity of his criminal history."  (<u>Id.</u>, ¶ 9.)  Given that the IJ was presented with evidence
16
    supporting the finding of danger, and the denial of bond, Petitioner has not demonstrated
17
    prejudice.
18
        **IT IS THEREFORE RECOMMENDED** that Marcos Antonio Lomeli's  Petition
19
    for Writ of Habeas Corpus be **DENIED** and **DISMISSED WITH PREJUDICE** (Doc. #1).
20
        This recommendation is not an order that is immediately appealable to the Ninth
21
    Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
22
    Appellate Procedure, should not be filed until entry of the district court's judgment.  The
23
    parties shall have ten days from the date of service of a copy of this recommendation within
24
    which to file specific written objections with the Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Rules
25
    72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within
26
    which to file a response to the objections.  Failure timely to file objections to the Magistrate
27
    Judge's Report and Recommendation may result in the acceptance of the Report and
28

1  Recommendation by the district court without further review.  See United States v. Reyna-

2  Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual

3  determinations of the Magistrate Judge will be considered a waiver of a party's right to

4  appellate review of the findings of fact in an order or judgment entered pursuant to the

5  Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.

6          DATED this 31st day of October, 2008.

7

8

9

10

11

12  _____

13          Michelle H. Burns
        United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28